UNITED STATES BANKRUPTCY COURT    FOR PUBLICATION
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

    KRYSTYNA WROBEL,
    aka KRYSTYNA WAWRYNCZUK,
    fdba WHITE EAGLE SQUARE    Case No. 12-13001 K
    APARTMENTS, INC., fka
    KRYSTYNA MINORCZYK

              Debtor
------------------------------------------------------------------

OPINION AND ORDER
FINDING LACK OF "GOOD FAITH" IN A CHAPTER 13 PLAN
AND RESOLVING PENDING MOTIONS

Since the 2005 amendments collectively known as 'BAPCPA," there has been little reason for a low-income debtor ($30,000/yr. in this case) with entirely-exempt assets to file for relief under Chapter 13 rather than Chapter 7. For example, strip-down of cars purchased within 910 days of the filing is not permitted, and the "super discharge" of debts is almost eliminated. But if there is a question about "exemptibility" of an asset, there is a good reason to file under Chapter 13 rather than Chapter 7. If the Court's answer is not favorable to a debtor, he or she may withdraw from this Court, and rely on the state courts. (A Chapter 7 debtor does not have a statutory right to dismissal (11 U.S.C. § 707(a)) but a Chapter 13 debtor does (11 U.S.C. § 1307(b).)

Before those amendments, "bankruptcy planning" in New York (but not in some other states) relied upon this statement in the Legislative History to the 1978

Bankruptcy Reform Act: **"As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. See *Hearings*, pt. 3, at 1355-58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law. (H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 360-363.)"**

It was in 2005 that 11 U.S.C. § 522(o) was enacted. It states that a homestead is exempt, <u>but</u> the amount of exemption as to:

> "(1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> (3) a burial plot for the debtor or a dependent of the debtor; or]
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead,
> <u>shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor</u> and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of." [Emphasis added.]

Clearly Congress had changed its mind after 30-odd years of notoriety cases (e.g. *In re Bowie Kuhn*) and possible enticements by some states to get very wealthy persons accused of tort or of crime to move there and shelter their wealth in an unlimited homestead exemption.

This Debtor's circumstances were very far outside Congress' lens. But

even when statutes might sweep too broadly, courts may not ignore them.

In the present case the Debtor converted $75,000 of non-exempt cash into a $75,000 homestead before filing her Chapter 13 Petition. Her former matrimonial counsel was in the process of obtaining a judgment against her for fees and expenses, and the funds that she used to acquire the homestead had their origin in a settlement which that counsel negotiated but did not have a chance to reduce to judgment before the firm was fired by the Debtor.[1] In other words, she chose not to pay her debt to her former matrimonial counsel (which was eventually adjudicated in state court to be a debt in excess of $96,000), but instead purchased the home. (She had been living in a rented apartment.) For further details the reader is referred to an earlier decision, *In re Wrobel*, 508 B.R. 271 (Bankr. W.D.N.Y 2014), and the Court presumes the reader's familiarity with that decision. The Court ruled that 11 U.S.C. § 522(o) did not defeat her claim to a "homestead exemption" in her condominium, but attached some conditions to that decision because of the fact that the condominium was purchased from her future son-in-law for $75,000 in cash (from the matrimonial settlement) plus a $10,600 mortgage to her daughter. (English seems to be a second language to the Debtor, and she has testified in an inconsistent manner about the reason for that mortgage. On the one hand she has attested that her daughter contributed the $10,600 at closing, but on the other hand she has testified to the effect that that money was loaned by her

---

[1] A prior published decision of this Court, cited below, incorrectly ascribed the negotiated settlement to a subsequent matrimonial counsel. Reconsideration was not sought in a timely manner: that will be addressed below.

daughter at various times in various amounts during the long matrimonial proceeding when the Debtor needed monetary help, and she wanted her daughter to have recourse to the condominium.)

Now that the Debtor has won a conditional victory upon the 11 U.S.C. § 522(o) issue, she adopts a "tough luck" posture toward her former matrimonial counsel.  The ruling has become her sword, rather than her shield.  She proposes a 10% payout in what is essentially a one-creditor case so that she can enjoy a judgment-free, debt-free homestead bought with money that the creditor helped her to win from her ex-husband.  It seems that she believes that because all of her assets are exempt, simply meeting the "disposable income test" entitles her to a ruling that the Plan is a "good faith plan" under 11 U.S.C. § 1325(a)(3).

The former matrimonial counsel - - the Hogan Willig firm - - has not taken this matter lightly.  In its initial filing in this Debtor's case, the firm asserted extensive objections to this Chapter 13 filing and to the Plan.   Because the Court provisionally ruled against the firm as to the § 522(o) issue, and because the firm has moved on to the "good faith" objection (without prejudice to the firm's right and stated intention to appeal that ruling), the Court has begun an evidentiary hearing in that regard.  In the midst of that hearing, with the Debtor on the stand, the Hogan Willig firm began a line of questioning that would invade the attorney-client privilege as between the Debtor and her current counsel.  The appropriate objection was raised by her current counsel.  Additionally, the Hogan Willig firm subpoenaed the attorney who represented the

Debtor's former son-in-law in the condominium transaction.[2]

The firm argues that under the "crime-fraud" exception to the attorney-client privilege, it may examine the Debtor as to her conversations with her lawyers, and may examine her lawyers and her former son-in-law's lawyers in connection with the relevant transactions. That matter has been briefed and is of record in this case.

The Court finds that in the firm's effort to demonstrate that the Plan is not a "good faith plan," it seeks to go to extremes that the Court concludes are not necessary. Although the evidentiary hearing regarding "good faith" is not completed,[3] the undisputed facts in this case are such that the Court is satisfied that no further hearing is necessary and that the Plan does not meet the "good faith" test.

The Debtor's proposal to pay 10% of Hogan Willig's $96,000 judgment over the course of five years and then enjoy her home free of any encumbrances (except for a small mortgage to her daughter) sounds innocuous enough until one reflects (as the Court has reflected for over two years) upon the fact that she bought her home after she was sued by Hogan Willig, and the fact that she did so with funds which (in part) were the fruits of Hogan Willig's representation of her in a divorce proceeding,

---

[2] At the time of the condominium transaction, he was engaged to the Debtor's daughter. It appears that they married, but have since divorced, and the Debtor's daughter now lives in a different state.

[3] Even if the Court were to deny the effort to set the attorney-client privileges aside, Hogan Willig has other evidence that it wishes to produce in support of its objection to the Debtor's Plan on "good faith" grounds. Further, it is unclear whether the Debtor would present (when the burden of going forward shifts back to her) anything more than what she has presented in response to examination by Hogan Willig and "cross" examination by her own counsel.

she seeks to extract too many advantages from the Chapter 13 process. Thus, her Plan is not a "good faith" plan. (11 U.S.C. § 1325(a)(3).)

## HOGAN WILLIG'S SELF-INFLICTED WOUNDS DO NOT COMPEL A RULING IN FAVOR OF THE DEBTOR

Hogan Willig shot itself in the foot many times over the years since it accepted representation of the Debtor in her divorce case, but that does not mean that her Plan meets the "good faith" test here in Chapter 13. A list would include these facts: (1) Hogan Willig expended more than 800 hours in her matrimonial case (and some incidental legal matters unrelated to the divorce), knowing that she had no income and no assets, but hoping that they would win a substantial result given the seeming wealth of her husband. As Mr. Hogan represented in open Court on August 25, 2014: "We didn't run in and decide to spend 800 hours because we felt it made a lot of sense to just destitute this lady . . . [The apparent equity in marital assets was] the reason that we spent the time; we conducted, I conducted eight depositions; I was in court 10, 12, 15 times; we had 800 phone calls . . . because we were trying to get at those assets."

(2) If Hogan Willig ever tried to collect attorneys fees from her former husband (and there is no evidence before the present Court to suggest that it did), it did not achieve that.

(3) It never sought to assert a charging lien against the cash proceeds

that resulted (at least in part) from its work in representing her in the matrimonial proceeding.

(4) Indeed, although Hogan Willig went to two different state courts in an effort to prevent her from using the $101,000 cash proceeds from the divorce proceeding, it did not assert that it had a lien of any sort on those proceeds (so far as this Court has been told).  (The state courts simply ruled that the law firm's fears that she might choose to buy a homestead instead of paying them were "too speculative.")

(5) Despite its lack of success in delivering upon its "alleged" promises to the Debtor[4] of a meaningful result within "six months" (such as obtaining support payments), Hogan Willig, a few years later, apparently asked the Debtor to make arrangements to pay what had become a $120,000 invoice for legal services and expenses.  The Debtor obviously panicked.  She fired Hogan Willig and filed a Grievance with the Bar Association.  Hogan Willig asserts that she should have asked for a consultation by which she might "settle" the bill, instead of what she did in panic.  Maybe she should have, but her testimony is that she had no means to offer anything at all, and that the fact that she had no such means was <u>because Hogan Willig did not deliver on its promises</u>.  (There is no evidence that Hogan Willig reached-out to her in any way to suggest a willingness to reduce the bill, until <u>after</u> she filed the Grievance.)[5]

---

[4] The Debtor attests that the Hogan Willig firm promised her results which, at least, would take the form of support payments from her then-husband.

[5] She did re-hire Hogan Willig for a time.  The terms and circumstances are not clear to the Court.  (There might have been a critical deadline to meet in the divorce court.)

Her Grievance against Hogan Willig was premised on her belief that as the bill ran up to over 800 hours of work and over $120,000 in fees and expenses, the firm "did not have [her] best interests in mind." Apparently, the Grievance Committee decided that the matter was a "fee dispute" not a "grievance." The firm then reduced its bill to approximately $80,000 and sued the Debtor in state court. The firm states that that was an exercise in billing judgment (reducing its hourly rate to $100) but the Debtor has suggested that it was an effort to avoid arbitration, so that the firm could sue for a money judgment against her. (Apparently the rules of the matrimonial court command the appropriate forum for fee disputes, based on the amount in controversy, and perhaps $80,000 permitted suit while $120,000 might have required arbitration.

(6) After the Debtor hired her present counsel, bought the condominium, suffered the filing of Hogan Willig's judgment against her, filed for relief under Chapter 13, and sought to set aside Hogan Willig's judgment lien under 11 U.S.C. § 522(f), this Court in its decision of March 28 , 2014, invited Hogan Willig to have the property appraised because the transfer of $75,000 might have exceeded the value of the property to an extent that would support Hogan Willig's vigorous insistence that it was a "sham transaction" - - a fraudulent transfer under 11 U.S.C. § 544 or § 548, totally apart from 11 U.S.C. § 522(o). The firm did not avail itself of the opportunity to do that appraisal. Now it changes its mind. It now wishes to offer appraisal testimony to the effect that the condominium was not worth only in the $60,000 range, and thus the payment of the purchase price was a "fraud" upon Hogan Willig.

(7) Even after this Court misinterpreted the submissions and thus erroneously stated in its March, 2014 Decision that it was not the Hogan Willig firm that achieved the settlement that led to the $101,000 fund, the firm did not seek reconsideration. Instead, Hogan Willig sought the District Court's leave to appeal, raising this Court's error of fact as one basis for the appeal. Leave was denied. (This Court invited a late motion for reconsideration solely so that it might know the details of its error. The invitation was not a ruling as to "timeliness.")

This Court, however, is not inclined to rule that the Debtor is relieved of her 11 U.S.C. § 1325(a)(3) burden of "good faith" because of Hogan Willig's self-inflicted wounds. Rather, meaningful burdens lie upon Chapter 13 debtors, regardless of their creditors' missteps, as discussed below.

DISCUSSION

For over twenty years on the Bench it has been this writer's view that "good faith" in a Chapter 13 case simply means treating creditors in a "fundamentally fair" manner,[6] and has said that if a Chapter 13 Debtor seeks to extract too many benefits from the Chapter 13 process, his or her plan might be rejected as lacking "good faith." The Court is reminded of the case of *In re Johnson*, 92-14114K, an unreported case before this writer in which a Chapter 13 debtor had been in a car

---

[6]Some cases refer to it as "honesty of purpose" ( e.g. *In re Hawes*, 73 B.R. 584 (Bankr. E.D. Wis. 1987); *In re Graves*, 19 B.R. 402 (Bankr. La. 1982); *In re Niggles*, 7 B.R. 373 (Bankr. N.D. Ga. 1980).)

accident pre-petition. The other driver's insurer sent her a check to repair the damage to her car. Instead of obeying her contract obligation to <u>her</u> car lender to repair <u>its</u> collateral, she spent the money. When she filed her Chapter 13 case, she wanted to strip-down the value of the car (and thus the amount of the secured claim) to its damaged value, and, additionally, she offered only the minimum 36-month plan, instead of a longer plan that would treat the car lender fairly. That sought too many advantages from the Chapter 13 process, and this writer rejected her plan as lacking in "good faith."

The present Debtor was not denied her homestead exemption under § 522(o) despite vigorous and cogent opposition, and the § 522(o) decision in her favor is still appealable. It is this Court's view that[7] if the Debtor wants a Chapter 13 discharge, she must propose a Plan that treats Hogan Willig with an honest intention and purpose to pay it fairly, at least in part. Given her meager income, she will ask "How can I offer more than 10% of the $96,000 over the course of a five year plan?" <u>She must be informed by her counsel of the voluntary sacrifices that debtors make every day here to satisfy a different - - but equal - - test. The "feasibility" requirement.</u>

Section 522 (c) of the Code makes it clear that no debtor may be compelled by the Court to contribute exempt property to a plan. (Rather 11 U.S.C.

---

[7] Now Hogan Willig asserts N.Y. Debtor and Creditor Law § 273-a. It seems to be another self-inflicted wound that Hogan Willig did not make the "fraud" assertion when the time was permitted to do so <u>in a § 523 Complaint</u>. (That might be the firm's eighth self-inflicted wound.) Nonetheless, the Court does consider that statute in the § 1325 context. (That state statute addresses transfers by a defendant in a lawsuit seeking a money judgment.)

§ 1322(b)(8) makes it clear that such a contribution is a "permitted" provision.) Similarly (and obviously), the Court may not force a debtor to take a second job or force a non-debtor spouse to go get a job. But debtors here make such offers of exempt property every day, and also offers to work longer hours, to take on a second job, and so on.

The usual context of such an offer is when a debtor could not overcome a "feasibility" objection unless otherwise-unavailable assets, income, or assistance is voluntarily committed to a plan. The cases range from debtors' commitment of totally exempt income (e.g. Social Security benefits, unemployment benefits) to meet both the 11 U.S.C. § 109 "regular income" requirement for Chapter 13 eligibility, and the 11 U.S.C. § 1325(a)(6) "feasibility" requirement), to "I'll get a second job," to voluntary assistance from non-debtor family members (not usually satisfactory under § 109, but regularly accepted by the Court as to "feasibility), to "I will sell-off pieces of my homestead farm when needed to meet Plan payments," to "I will refinance my homestead at some point during the Plan to make a Balloon Payment that I propose in my Plan" (not usually found to overcome a "feasibility" objection, because there can be no certainty of obtaining a refinancing (e.g. *In re Hendricks*, 250 B.R. 415 (Bankr. M.D. Fla. 2000)), to "my spouse will return to the workplace." And many other offers.

<u>Simply committing all of one's non-exempt assets and meeting the "projected disposable income" test, does not compel a ruling that a plan is "feasible." Identically, it does not compel a ruling that a plan meets the "good faith" test of 11</u>

U.S.C. § 1325 (a)(3).

Rather, "honesty of purpose" requires that the Debtor propose a "fundamentally fair" treatment to her only meaningful creditor despite all of the hostility, emotion and expense that naturally evolved from the events described above and in this Court's earlier decision at 508 B.R. 271.

CONCLUSION

The Debtor is given until February 27, 2015 to submit to the Court what one might call her "highest and best offer" in the form of an amended Chapter 13 Plan.

The Debtor could instead permit her case to be dismissed, leaving her to argue to the state courts that Hogan Willig should not be permitted to foreclose its judgment lien against her homestead,[8] assuming arguendo that the firm would seek to foreclose, rather than simply relying on its judgment lien for some eventual recovery.

Hogan Willig's Motion for Reconsideration of this Court's March, 2014 ruling is denied as "late filed." The Court will leave to another case the question of whether its § 522(o) ruling would have been different if it had been clear to the Court that the firm did negotiate the settlement that eventually yielded a judgment that eventually yielded the $101,000 in non-exempt cash.

---

[8]The Debtor needs to be clear about the fact that although she does not believe that Hogan Willig earned such a huge fee against her (given the facts that she had no income and owned no assets while the bill ran up) this Court has no power to set aside the state court's monetary award. (*Kelleran v. Andrejevic*, 825 F.2d 692 (2d Cir. 1987)).

The son-in-law's lawyer's "Motion to Quash" Hogan Willig's subpoena calling him to Court is granted.

The Hogan Willig firm's effort to invoke the "crime-fraud exception" to the attorney-client privilege possessed by the Debtor or her former son-in-law is denied as moot.

The Chapter 13 Trustee's Motion to Dismiss this case has been rescheduled to March 9, 2015 at 12:00 noon, so that the Debtor may offer a confirmable plan if she chooses to do so.  Otherwise this case will be dismissed, and her payments to the Chapter 13 Trustee will be returned to her pursuant to 11 U.S.C. § 1326(a)(2).

SO ORDERED.

Dated:    Buffalo, New York
          February 12, 2015

                                                s/Michael J. Kaplan

                                                _____
                                                U.S.B.J.